IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARVIN ROMAN TIRADO AND ANA VALENTÍN,<br><br>  **Plaintiffs,**<br><br> v. <br><br>HOSPITAL SAN CARLOS, INC. (D/B/A HOSPITAL SAN CARLOS BORROMEO); DR. PABLO RIVERA VALE, MRS. RIVERA (NAME UNKNOWN), AND THE CONJUGAL PARTNERSHIP COMPOSED BY THEM; DR. JOSÉ N. ROMÁN SANTIAGO, MRS. ROMÁN (NAME UNKNOWN), AND THE CONJUGAL PARTNERSHIP COMPOSED BY THEM; DRA. MIRELIS MIRANDA GALLOZA, JOHN DOE (NAME UNKNOWN), AND THE CONJUGAL PARTNERSHIP COMPOSED BY THEM; INSURANCE COMPANIES C, D, E, AND F;<br><br>  **Defendants.** | CIVIL NO. 19-1249 (JAG) |

OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court are (1) Defendant Dr. Mirelis Miranda Gallozza's Motion *in Limine* as to Dr. Allan Miller's Expert Opinion and Motion for Summary Judgment, Docket No. 72; (2) Defendant Dr. Pablo Rivera Vale's Motion for Partial Summary Judgment, Docket No. 79; and (3) Defendant Hospital San Carlos, Inc. d/b/a Hospital San Carlos Borromeo's Motion for Summary Judgment, Docket No. 83.[1] Marvin Roman Tirado and his wife Ana Valentín

---

[1] Defendant Dr. José N. Ramon Santiago filed Motions for Joinder as to Docket Nos. 79, 83, 84. *See* Docket Nos. 87; 88. Dr. Pablo Rivera Vale and Dr. Mirelis Miranda Galloza filed Motions for Joinder as to Docket Nos. 83 and 84. *See* Docket Nos. 85; 86.

CIVIL NO. 19-1249 (JAG)                                                                    2

(collectively "Plaintiffs") opposed Defendant Dr. Miranda Gallozza's Motion *in Limine* as to Dr.

Allan Miller's Expert Opinion and Summary Judgment. Docket No. 73. Defendant Dr. Rivera

Vale's Motion for Partial Summary Judgment and Defendant Hospital San Carlos Borromeo's

Motion for Summary Judgment are unopposed. Pursuant to this Opinion and Order, the claims

brought forth by Plaintiffs are hereby **DISMISSED WITH PREJUDICE.**

   I.    **Non-Compliance with Local Rule 56 (C)**

         First, the Court notes that Plaintiffs failed to comply with Local Rule 56(c), which

provides:

> A party opposing a motion for summary judgment shall submit with
> its opposition a separate, short, and concise statement of material
> facts . . . Unless a fact is admitted, the opposing statement shall
> support each denial or qualification by a record citation as required
> by this rule. The opposing statement may contain in a separate
> section [of] additional facts, set forth in separate numbered
> paragraphs and supported by a record citation as required by
> subsection (e) of this rule.

"Where a party does not act in compliance with Local Rule 56(c), 'a district court is free, in the

exercise of its sound discretion, to accept the moving party's facts as stated.'" *Total Petroleum P.R.*

*Corp. v. Colon*, 819 F. Supp. 2d 55, 61 (D.P.R. 2011) (citing *Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d

42, 45 (1st Cir. 2004)); *see also Mariani-Colon v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007)

("If the party opposing summary judgment fails to comply with Local Rule 56(c), the rule permits

the district court to treat the moving party's statement of facts as uncontested.") (cleaned up).

         Plaintiffs did not contest any of the facts presented in Defendants' Statements of

Uncontested Facts. Docket Nos. 72-1; 79-1; 83; 88. Rather, Plaintiffs outline the summary

judgment standard of review and put forth a brief statement claiming that "in this case [there]

exist[s] [a] genuine dispute between the parties that a reasonable jury could return a verdict in

CIVIL NO. 19-1249 (JAG)                                                                                           3

the nonmoving party's favor, for that reason the Plaintiff [is] opposed to the summary judgment

filed by codefendant Dra. Mirelis Miranda Galloza." Docket No. 73 at ¶ 5.2. Plaintiffs, however,

failed to deny or qualify any of the facts furnished by Defendants, nor did they proffer their own

statement of material facts as required under Local Rule 56. The First Circuit has consistently

warned that litigants ignore Local Rule 56 at their peril. *Caban Hernandez v. Philip Morris USA, Inc.*,

486 F.3d 1, 7 (1st Cir. 2007). As such, the statements of uncontested facts submitted by Defendants

are deemed admitted. *See* Local Rule 56(e).

The following is a summary of the facts underlying this case. The Court has only credited

facts properly supported by specific and accurate record citations in accordance with Local Rule

56(e). Moreover, "[t]he court [has] no independent duty to search or consider any part of the

record not specifically referenced in the parties' separate statement of facts." *Id.*; *see Carreras v. Sajo,*

*Garcia & Partners*, 596 F.3d 25, 31 (1st Cir. 2010).

## II.     Summary of Pertinent Facts

At 4:15 a.m. on March 23, 2017, Plaintiff Roman arrived at Hospital San Carlos Borromeo's

Emergency Department in Moca, Puerto Rico after experiencing severe chest pain and difficulty

breathing. Docket Nos. 79-1 at ¶ 5; 89-1 at 1. Hospital San Carlos Borromeo does not have

"interventional cardiology capabilities." Docket No. 84 at ¶ 18. When he arrived at the Emergency

Department, Plaintiff Roman's blood pressure was 139/90, his pulse was 80 bpm, his respiratory

rate was 24 H, and his oxygen saturation was 100. Docket Nos. 79-1 at ¶ 6; 79-4.

Dr. Pablo Rivera Vale evaluated Plaintiff Roman at 4:25 a.m. Docket No. 79-1 at ¶ 7. Dr.

Rivera Vale ordered a portable chest X-ray, an electrocardiogram ("EKG"), blood tests to measure

cardiac enzymes, and treatment consisting of aspirin, Brilinta, intravenous nitrates, and

CIVIL NO. 19-1249 (JAG)                                                                                          4

morphine. Docket Nos. 1 at ¶ 4.5; 79-1 at ¶ 7; 84 at ¶ 8. The results of the blood test were available

at 4:35 a.m. and showed a Troponin I level of 0.02 ng/mL and a Kinase-MB level of 1.5 ng/mL.

Docket Nos. 1 at ¶ 4.5; 79-6.

At 6:40 a.m. Dr. Mirelis Miranda Galloza, an Internal Medicine specialist, was consulted at 6:40 a.m.

Docket No. 89-2 at 3. The nurse's notes states that Plaintiff Roman was without chest pain at 7:10

a.m. Docket Nos. 79-1 at ¶ 8; 84 at ¶ 14; 89-1 at 1. Dr. Rivera Vale transferred Plaintiff Roman to Dr.

José N. Roman Santiago's care at 7:16 a.m. Docket Nos. 84 at ¶ 13; 89-2 at 1. A second EKG was

performed at 9:17 a.m. Docket No. 84 at ¶ 17. "At 9:39 a.m. a second troponin level came [back]

positive." *Id*. at ¶ 15; Docket No. 84-1 at 4. Plaintiff Roman was administered beta blockers,

Lovenox, Vasotec, and Lipitor. Docket Nos. 84 at ¶ 16; 84-1 at 13-14.

At 12:43 p.m., Dr. Miranda Galloza examined Plaintiff Roman and referred him to Dr.

Hector Martinez, a cardiologist at Mayagüez Medical Center, because he "[would] benefit [from]

a catheterization." Docket Nos. 84 at ¶ 19; 84-1 at 8-9. Dr. Martinez accepted Plaintiff Roman, and

nurse Riboberto Maury contacted an ambulance service at 1:10 p.m. . Docket Nos. 84 at ¶ 21; 84-1

at 16. Plaintiff Roman was in stable condition at the time of transfer. Docket No. 84 at ¶ 23.

Plaintiff Roman's transfer was completed at 1:52 p.m. *Id*. at ¶ 22.


## STANDARD OF REVIEW

A motion for summary judgment will be granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

*See* Fed. R. Civ. P. 56(a). A fact is disputed if it could be resolved in favor of either party, and

CIVIL NO. 19-1249 (JAG)                                                                    5

material if it potentially affects the outcome of the case. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d

6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)).

The movant bears the burden of showing the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party has properly supported

[its] motion for summary judgment, the burden shifts to the nonmoving party." *Santiago-Ramos v.*

*Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *DeNovellis v. Shalala*, 124 F.3d

298, 306 (1st Cir. 1997)). The non-movant must demonstrate "through submissions of evidentiary

quality [ ] that a trial worthy issue persists." *Iverson v. City of Bos.*, 452 F.3d 94, 98 (1st Cir. 2006)

(citations omitted).

In evaluating a motion for summary judgment, the Court must view the entire record "in

the light most hospitable to the party opposing summary judgment, indulging in all reasonable

inferences in that party's favor." *Winslow v. Aroostook Cty.*, 736 F.3d 23, 29 (1st Cir. 2013) (quoting

*Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000)). The court may safely ignore "conclusory

allegations, improbable inferences, and unsupported speculation." *Medina-Rivera v. MVM, Inc.*, 713

F.3d 132, 134 (1st Cir. 2013) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.

1990)). The Court cannot make credibility determinations or weigh the evidence, as these are jury

functions and not those of a judge. *See Anderson*, 477 U.S. at 255.

## ANALYSIS

Prior to delving into the merits of the Motions for Summary Judgment, the Court will

address the Motion *in Limine* as to Dr. Miller's expert testimony.

CIVIL NO. 19-1249 (JAG)                                                                                           6

I.    **Motion** *in Limine*

Defendant Dr. Miranda Galloza moves to limit and/or strike the testimony of Plaintiffs'

expert Dr. Allan Miller under Federal Rule of Civil Procedure 26(a)(2)(B). Docket No. 72 at 10-13.

Defendant Dr. Miranda Galloza argues that "Dr. Allan Miller can only testify in Court as to what

he believes is the applicable standard of care. [Dr. Miller's] testimony, absent respected medical

references on the standard of care, lacks probative value and will only serve to confuse and to

mislead the jury." *Id.* at 13.

A motion *in limine* "in a broad sense [refers] to any motion, whether made before or during

trial, to exclude anticipated evidence *before the evidence is actually offered.*" *Luce v. U.S.*, 469 U.S. 38, 40

n.2 (1984) (emphasis added). Rule 26(a)(2)(B) outlines the requirements for expert witness

testimony:

> (B) Witnesses Who Must Provide a Written Report. Unless
> otherwise stipulated or ordered by the court, this disclosure must
> be accompanied by a written report—prepared and signed by the
> witness—if the witness is one retained or specially employed to
> provide expert testimony in the case or one whose duties as the
> party's employee regularly involve giving expert testimony. The
> report must contain:
>
>> (i) a complete statement of all opinions the witness will
>> express and the basis and reasons for them;
>>
>> (ii) the facts or data considered by the witness in forming
>> them;
>>
>> (iii) any exhibits that will be used to summarize or support
>> them;
>>
>> (iv) the witness's qualifications, including a list of all
>> publications authored in the previous 10 years;
>>
>> (v) a list of all other cases in which, during the previous 4
>> years, the witness testified as an expert at trial or by
>> deposition; and

> (vi) a statement of the compensation to be paid for the study
> and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). More so, Federal Rule of Evidence 702 "requires that expert testimony

be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and

(3) that the witness apply the principles and methods reliably to the facts of the case." *Pages-*

*Ramirez v. Ramirez-Gonzalez*, 605 F.3d 109, 113 (1st Cir. 2010) (cleaned up).

Dr. Miller's report cites the 2014 Clinical Practice Guidelines of the American Heart

Association and the American College of Cardiology for the Management of Patients with Non-

ST-Elevation Acute Coronary Syndromes ("Clinical Practice Guidelines") as his sole reference. *See*

Docket No. 72-5 at 3. However, in his deposition, Dr. Miller states that he reviewed "a compilation

of all the literature," which shaped his expert opinion. *See* Docket No. 72-4 at 30, 39, 64. When

questioned further as to which references he relied on "to assess the quality of the treatment given

to [the] patient," Dr. Miller answered, "as I said before in my testimony[,] I reviewed in complete

fullness of the medical literature . . . I reviewed the entire medical, emergency medical literature

as well as medical literature." *Id.* at 64-65. Dr. Miller was unable to list any additional sources he

considered before rendering his opinion. *See* Docket No. 72-4 at 64-67. When pressed as to the

medical references relied upon to establish the standard of care as it pertains to this case, Dr.

Miller replied, "again, my answer is the same[,] [ ] there is a whole host of information of literature

both in textbooks, internal articles, and in the internet that I use for reference." *Id.* at 65. Dr. Miller

offers various iterations of this response throughout the deposition.[2] After he was reminded that

---

[2] *See* Docket No. 72-4 at 66 ("No. Again, I reiterate the same answer, I read the entire literature both journal
articles and textbooks and I've included this as is most relevant to the case. That's the answer again."); *id*
at 67 ("Again, I know the standard of care it includes all the medical literature that I just referred to. It
includes my thirty-one (31) years of practice. I know the standard of care. You can ask me the same question

CIVIL NO. 19-1249 (JAG)                                                                 8

the Federal Rules of Civil Procedure require such disclosure, Dr. Miller retorted, "[a]gain I'm going

to give you the same answer and it's going to be up to the judge to determine whether it's

admissible or not." *Id.*

The Court finds that Dr. Miller's testimony is not admissible. The Court understands that

Dr. Miller's opinion is founded on various publications and sources of information. Dr. Miller is

wise to base his opinion on several materials and frequently updated periodicals. However, such

resources *must* be identified so the Court can ensure Dr. Miller's opinion is based upon reliable

foundations. *Pages-Ramirez*, 605 F.3d at 113. Had Dr. Miller limited the basis of his opinion to his

medical experience and the Clinical Practice Guidelines, the Court could assess the reliability of

the foundations of his opinion. Nevertheless, the Court cannot make determinations as to

unspecified "internet articles." Just as an author who pens articles that rely upon external

authorities without appropriate citations commits plagiarism, an expert witness who cannot

provide the resources that form his or her opinions runs afoul of the Federal Rules of Civil

Procedure and Evidence. As Dr. Miller has failed to identify the materials relied upon, his

testimony does not comply with Rule 26(a)(2)(B). Therefore, the Court **GRANTS** Defendant Dr.

Miranda Gallozza's Motion *in Limine* as to Dr. Allan Miller's Expert Opinion, Docket No. 72.

---

I'm going to give the same answer, it's the same answer."); *id.* ("No. I said this is based on the entirety of it. It's thirty-one (31) years of experience, it's reading, being an ASAP member for thirty (30) years. It's reading the journals of emergency medicine. It's reading textbooks, articles, internet. It's all of the above and I cannot pars[e] out one particular reference that you're saying."); *id.* at 67-68 ("No, that's incorrect. The standard of care is not static, it's dynamic, it keeps moving. It depends on new information and the information that we review as physicians is not just from one article or two articles, it's from a compilation of articles, textbooks, and experience period."); *id.* at 68 ("If you let me answer your question. So, the answer is that this is the reference that's related to the standard of care specifically related to this case, in addition to all the other factors that I just mentioned.").

CIVIL NO. 19-1249 (JAG)                                                            9

### II.   Motion for Summary Judgment

Plaintiffs bring forth two causes of action: a claim under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and a negligence claim under Article 1802 of the Puerto Rico Civil Code. Docket No. 1 at ¶¶ 5.1-6.4.

### A.   Emergency Medical Treatment and Labor Act

Under EMTALA, "the issue is whether the procedures followed in the emergency room, even if they resulted in a misdiagnosis, were reasonably calculated to identify the patient's critical medical condition." *Del Carmen Guadalupe v. Negron Agosto*, 299 F.3d 15, 21 (1st Cir. 2002). EMTALA imposes a duty on covered hospitals to (i) provide "appropriate medical screening examination within the capacity of the hospital's emergency department," and (ii) stabilize an "individual [who] has an emergency medical condition" prior to "transfer of the individual to another medical facility." 42 U.S.C. §§ 1395dd(a), (b)(1).

> To establish a violation of the screening or stabilization provisions in EMTALA, a plaintiff must prove that:
>
> (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition.

*Alvarez-Torres v. Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 51 (1st Cir. 2009) (citing *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1190 (1st Cir. 1995)). Under EMTALA, patients are deemed stable when they have received "medical treatment of [their] condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result

CIVIL NO. 19-1249 (JAG)                                                        10

from or occur *during the transfer of the individual from a facility.*" *Id.* at 52 (citing 42 U.S.C. §

1395dd(e)(3)(A)). Under EMTALA, transfer is permissible when (1) the transferring hospital

provided "medical treatment within its capacity which minimizes the risks to the individual's

health," and (2) the receiving hospital has space available and qualified personnel for treatment

and has agreed to accept the patient to provide the appropriate medical treatment. 42 U.S.C. §§

1395dd(c)(2)(A), (c)(2)(B)(ii).

Plaintiffs allege that

> [the] Hospital San Carlos, staff and medical faculty didn't provide
> and weren't able to provide the medical attention necessary to
> stabilize the Plaintiff, Mr. Roman, and transfer was required. By
> failing to transfer the Plaintiff to a facility where he could receive
> proper medical care, his health was put in serious jeopardy and as a
> result he suffered a serious dysfunction to his myocardial muscle.
> [Which] constituted a failure to stabilize and an effective dumping
> of the patient according to EMTALA. Failing to perform the serial
> EKGs constituted a failure to screen regarding EMTALA.

Docket No. 1 at ¶ 6.4. Nonetheless, Plaintiffs fail to demonstrate an EMTALA violation. The

uncontested facts show that Plaintiff Roman received adequate medical care and was properly

screened at Hospital San Carlos Borromeo. Docket Nos. 72-1 at ¶ 39; 79-1 at ¶¶ 11-18, 24, 27.

Furthermore, Plaintiff Roman was transferred in accordance with EMTALA and was stable at the

time of transfer to Mayagüez Medical Center for further medical care. Docket No. 84 at ¶ 19-23.

Therefore, the Court hereby **GRANTS** Hospital San Carlos Borromeo's Motion for Summary

Judgment, Docket No. 83.

### B.   Article 1802 Negligence/Medical Malpractice

Plaintiff Roman alleges "the negligent acts and omissions described in [the] complaint and

committed by the Defendants, [led] to permanent heart damage and reduction of the myocardial

function of Plaintiff [Roman]." Docket No. 1 at ¶ 5.3. To prevail on their medical malpractice claim

CIVIL NO. 19-1249 (JAG)                                                                                    11

under Article 1802, Plaintiffs must demonstrate "(1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." *Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 167 (1st Cir. 2005) (cleaned up); *see also Vázquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007) ("The three essential elements for general tort claims are: (1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission.") (citation omitted). The applicable standard of care under Puerto Rico law is "that level of care which, recognizing the modern means of communication and education, meets the professional requirements generally acknowledged by the medical profession. The standard is a national one, and ordinarily must be demonstrated through expert testimony." *Rivera*, 415 F.3d at 168 (cleaned up). "Expert testimony is generally essential." *Id.*

As the Court has ruled that Dr. Miller's testimony is inadmissible under the Federal Rule of Civil Procedure 26, *supra* I, Plaintiffs are left without an expert witness to establish the appropriate duty of care and causation. A plaintiff cannot prevail on an Article 1802 medical malpractice claim without establishing a duty of care. Furthermore, the uncontested facts are that Defendants Dr. Miranda Gallozza, Dr. Rivera Vale, and Dr. Ramon Santiago complied with the duty of care. Docket Nos. 72-1 at ¶ 39; 79-1 at ¶¶ 11-18, 24, 27; 88 at ¶ 2(b). Thus, Plaintiffs cannot succeed under their Article 1802 claims. Consequentially, the Court **GRANTS** Defendants Dr. Miranda Gallozza, Dr. Rivera Vale, and Dr. Ramon Santiago's Motions for Summary Judgment, Docket Nos. 72 and 79.

CIVIL NO. 19-1249 (JAG)                                                                                          12

## CONCLUSION

For the aforementioned reasons, Defendant Dr. Miranda Gallozza's Motion *in Limine* is

hereby **GRANTED**. Additionally, Defendants Dr. Miranda Gallozza, Dr. Rivera Vale, Dr. Ramon

Santiago, and Hospital San Carlos' Motions for Summary Judgment are hereby **GRANTED**. *See*

Docket Nos. 72; 79; 83. Plaintiffs Marvin Roman Tirado and Ana Valentín's EMTALA and Article

1802 claims are hereby **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Tuesday, March 14, 2023.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge